1 | LUCIAN J. GRECO, JR., ESQ.
Nevada State Bar No. 10600
2 | JARED G. CHRISTENSEN, ESQ.
Nevada State Bar No. 11538
3 | BREMER WHYTE BROWN & O'MEARA LLP
1160 N. TOWN CENTER DRIVE
4 | SUITE 250
LAS VEGAS, NV 89144
5 | TELEPHONE:  (702) 258-6665
FACSIMILE:  (702) 258-6662
6 | lgreco@bremerwhyte.com
jchristensen@bremerwhyte.com
7 |
Attorneys for Defendants,
8 | MARCUS BROWN, SOUTHERN
REFRIGERATED TRANSPORT INC. AND IQS
9 | INSURANCE RISK RETENTION GROUP INC.

10 | **UNITED STATES DISTRICT COURT**

11 | **DISTRICT OF NEVADA**

12

13 | CANDYCE BOWLING,                    ) Case No.
                                       )
14 |          Plaintiff's,             ) **DEFENDANTS' EMERGENCY**
                                       ) **MOTION TO COMPEL**
15 |     vs.                           ) **PRODUCTION OF DOCUMENTS**
                                       ) **RESPONSIVE TO SUBPOENA**
16 | MARCUS BROWN, SOUTHERN            ) **OR, ALTERNATIVELY, MOTION**
    REFRIGERATED TRANSPORT, INC.      ) **TO TRANSFER ENFORCEMENT**
17 | AND IQS INSURANCE RISK            ) **OF SUBPOENA**
    RETENTION GROUP, INC.,            )
18 |                                   )
             Defendants.              )
19 | _____ )

20 | **NOW INTO COURT**, through undersigned counsel, come Defendants,

21 | Marcus Brown, Southern Refrigerated Transport, Inc. ("SRT") and IQS Insurance

22 | Risk Retention Group, Inc.,   which, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i),

23 | respectfully request that this Court compel third-party MedPort LA, LLC ("Medport")

24 | to produce documents responsive to the subpoena, which was issued by the United

25 | States District Court for the Western District of Louisiana (the "Issuing Court") on

26 | January 19, 2021 and served on Medport on January 20, 2021.

27 |      Alternatively, under Fed. R. Civ. P. 45(f), Defendants request that this Court

28 | transfer this motion to the Issuing Court for resolution. Defendants further request

3354.714 4845-3598-6410.1

emergency relief under LR 7-4.  Discovery in the underlying case closes on June 30, 2021 and trial is scheduled to begin on February 14, 2022.  Therefore, there is insufficient time for this Court to resolve this motion in ordinary course.

Defendants explain the grounds for the emergency motion in the accompanying memorandum, which is supported by the accompanying declaration and exhibits.

MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

a. The underlying lawsuit is a personal injury case filed by Plaintiff, Candyce Bowling, against Defendants in the Issuing Court-titled *Candyce Bowling vs. Marcus Brown, Southern Refrigerated Transport, Inc. and IQS Insurance Risk Retention Group, Inc.,* with a case number of 5:20-cv-00504.[1] The case stems from an alleged motor vehicle accident that occurred in Greenwood, Louisiana on April 9, 2019.[2] Following the alleged accident, Plaintiff claimed injuries and sought treatment with various medical providers.[3]

Medical and billing records obtained during discovery show that medical treatment for each Plaintiff was funded or financed, at least in part, by third-party litigation funding company Medport LA, LLC. Medport's website (medport.com/howitworks) describes its business practices, including servicing and funding:[4]

> (i) **How does servicing with Medport benefit my practice?**
> The administration and collection (i.e. servicing) of personal injury receivables is a whole different animal from private and government payer reimbursement.  Payment can slip through your fingers if you don't stay on top of cases. We're experts at this and have developed a process over the last 15

---

[1] *See* Exhibit 1, Defendants' Notice of Removal and Plaintiff's Petition attached thereto as Exhibit A.

[2] *Id.*

[3] *Id.*

[4] *See* Exhibit 2.

2

years spanning case statusing, negotiations and collections to maximize the collection of medical lien-backed receivables.

(ii) **How does funding with Medport benefit my practice?**

Treating under- or un-insured personal injury victims on a medical lien/LOP is difficult for your practice because the receivables sit dormant for years before they can be collected. Medport provides immediate cash flow against those receivables under customized financial structures that best fit your practice's needs and goals. We consider all lien/LOP-backed receivables regardless of age; they can be brand new or several years old. This means your practice can economically treat injured patients who don't have health insurance and gain financial stability. Two birds with one stone; that's how we like to do things.

(iii) **How much do you fund?**

Funding structure is custom tailored to your business' needs and objectives. Since structure varies by customer, we can't get into too much detail here. However, we can tell you that no account is too big or too small. Give us a shout, we're happy to discuss.

Medport's website also describes partnerships with medical providers throughout the country, though specific partners are not identified:

(iv) **What kind of providers does Medport work with?**

We're proud to work with America's highest quality providers and best trained, board-certified physicians. Our financial partners include but are not limited to: imaging centers, hospitals, chiropractors, physical therapists, orthopedic & neurosurgeons, ambulatory surgery centers and pain management physicians.

Based on its website, Medport apparently enters into written agreements with personal injury Plaintiff's, their attorneys, or medical providers throughout the country and that nature of the funding or servicing provided by Medport may vary depending on the parties to the agreement and their specific needs and objectives. Therefore, the agreements and related documents are necessary to determine the nature of the services provided by Medport with respect to Plaintiff in the

3

underlying case.

The Issuing Court issued a subpoena to Medport to produce documents responsive to the following requests:

1. A **complete and certified copy** of your entire file including, but not limited to, any and all documents, medical records, reports and all radiological films; hospital records, reports and all radiological films; emergency room records, reports and all radiological films; **fluoroscopy records and films**; out-patient care records, reports and all radiological films; office notes; consultations, evaluations; assessments and progress reports; charts; lab reports; x-ray reports; all radiological films; test results; therapy and treatment records; prescription records; including but not limited to all records regarding treatment rendered, correspondence from any other physician, attorney, hospital, insurance company etc., and all other documents in your possession and/or control pertaining to **Candyce Bowling (DOB: 12/26/1973).**

2. A **complete, certified copy of** all documents in your possession pertaining to **Candyce Bowling (D/O/B: 12/26/1973)** including but not limited to emails, documents, notes, memoranda, logs, diaries, etc. relative to plaintiff and/or plaintiff's counsel's retention of your services for the instant litigation. Any and all photographs, videos, drawings, statements, depositions, writings, investigations, and/or any other information and/or communications of whatever type and kind used in preparing any reports, memoranda, or correspondence in relation to this matter. Any and all initial, draft, revised, and final reports in relation to this matter. Any and all reference material, reports, treatises, articles, publications, written references, books and any and all material of whatever type or kind you relied upon for your conclusions as to plaintiff and the above-captioned litigation. Copies of any and all memoranda, email, correspondence and documentation related to any initial draft, revised or final report pertaining to this matter. And any and all other information and/or documentation of whatever type or kind which you may have in your possession regarding **Candyce Bowling,** regarding the incident made the basis of the instant matter.

3. A **complete, certified copy of** your billing file regarding this litigation including, but not limited to, time recordings, accounts receivables, charges for services and medical treatment rendered, payments received for services and medical treatment rendered, claims submitted, claims paid, and explanation of benefits relative to Candyce Bowling.

4. All agreements between you and any medical treatment provider that has provided treatment to Candyce Bowling.

5. All discounts received for services or treatments rendered to Candyce Bowling;

4

6.     All agreements between you and Candyce Bowling or her representatives regarding the amount charged, billed and/or owed for services rendered to Candyce Bowling.

7.     All negotiations and/or solicitations for the purchase of any accounts receivable related to Candyce Bowling.

8.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you and any of Candyce Bowling's medical providers.

9.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you and Dr. Douglas Lurie.

10.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you Orthopaedic Associates of New Orleans, A Professional Medical Corporation.

11.     Any and all documents, contracts, agreements or other information showing any contractual or business relationship between you and Dr. Peter Liechty.

12.     Any and all documents, contracts, agreements or other information showing any contractual or business relationship between you and One Spine Institute, LLC.

13.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you and Guardian Care, LLC.

14.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you and any litigation funding company.

15.     Any and all documents, contracts, agreements, or other information showing any contractual or business relationship between you and Sean Alfortish.

**16.**     A listing of the total number of patients referred to you for treatment from the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group for the past five (5) years. **[No information is sought relative to the identity of any patient. All identifying patient information may be redacted]**

**17.**     Any and all records reflecting total income of MedPort LA, LLC relating to patients referred to you for treatment from the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group for the past five (5) years. **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

**18.**     Copies of any and all documents or correspondence by any known medium discussing the nature of any fee arrangements, including but not limited to, contingency, semi-contingency agreements, and letters of guarantee, between your office and the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group for the past (5) five years related to any Louisiana litigation. **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

**19.**     Copies of any and all documents noting the number of your patients who are represented by the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard and Lionel Sutton **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

**20.**     Copies of and any all reports and/or opinions letters, including drafts, prepared by you for the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group in any Louisiana litigation during the last five (5) years; **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

**21.**     Copies of any statements, forms, or documents in your possession and control evidencing income earned by you from referrals to or from the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group in the past five (5) years; **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

22.     Copies of any and all patient lists that you have in your possession listing potential referrals from the Law Offices of Jack M. Bailey, Jr., Rebecca Cunard, Lionel Sutton and The Sutton Law Group for any and all Louisiana lawsuits **[No information is sought relative to the identity of any patient. Identifying patient information may be redacted]**

23.     Any and all letters, emails, correspondence, faxes and communications sent to and received by any attorney pertaining to the instant litigation.[5]

///

///

---

[5]     *See* **Exhibit 3**, Notice of Records Deposition and Subpoena Duces Tecum issued to Medport LA, LLC.

1   Defendants served Medport with the subpoena on January 20, 2021.[6]
2   Around February 2, 2021, Medport served Oasis Reporting Services ("Oasis")
3   with various medical and billing records responsive to the subpoena.[7]   However,
4   Medport failed to produce any of the contracts, agreements, or payment
5   information in connection with Medport's purchase of various accounts
6   receivables from several medical providers who treated Plaintiff.

7   The Issuing Court has already issued a ruling in the underlying case concerning
8   a Motion to Quash filed in response to a nearly identical subpoena.[8]   Notably, the
9   Issuing Court specifically determined that the same type of documents Medport is
10   refusing to produce are relevant to the underlying case and the Issuing Court ordered
11   that they be produced.[9]

12   Accordingly, on March 16, 2021, undersigned counsel sent correspondence
13   to counsel for MedPort advising of the Issuing Court's ruling and that Defendants
14   would have no choice but to file a Motion to Compel in the event complete
15   responses to the subpoena were not received.[10]   However, on March 25, 2021,
16   counsel for MedPort sent correspondence to the undersigned advising that
17   MedPort was refusing to produce the requested documents, completely ignoring
18   the ruling from the Issuing Court.[11]

19   Meanwhile, discovery in the underlying case closes on June 30, 2021.[12]
20   With discovery set to close within a month, Defendants have no choice except to
21   file this emergency motion to ensure Medport's compliance with their subpoena.

---

[6]   See **Exhibit 4**, Affidavit of Service.

[7]   *See* **Exhibit 5**, correspondence from Medport to undersigned counsel dated February 24, 2021 and **Exhibit 6**, documents produced by Medport bates numbers MED000001 – MED000339.

[8]   See **Exhibit 7**, Memorandum Order by Issuing Court dated March 11, 2021.

[9]   *Id.*

[10]   *See* **Exhibit 8**, correspondence to Medport from undersigned counsel dated March 16, 2021

[11]   *See* **Exhibit 9**, correspondence from MedPort to undersigned counsel dated March 25, 2021.

[12]   *See* **Exhibit 10**, Amended Scheduling Order dated, March 15, 2021.

7

## II.   ARGUMENT

### A.   THIS COURT SHOULD COMPEL MEDPORT TO PRODUCE THE WITHHELD DOCUMENTS BECAUSE THOSE DOCUMENTS ARE RELEVANT AND PROPORTIONAL TO THE NEEDS OF THE UNDERLYING CASE.

Medport fails to justify its refusal to produce the Withheld Documents in response to Defendants' subpoena.  Under Fed. R. Civ. P. 45, "a party may serve a subpoena commanding a nonparty to attend and give testimony and to produce documents."[13]  When the nonparty resists the subpoena, the party issuing the subpoena may move ''the court for the district where compliance is required for an order compelling production or inspection."[14]  The party resisting the subpoena bears the burden of showing why the discovery sought should be denied.[15]  For example, the objecting party must set forth the reasons why the information sought is irrelevant or otherwise protected from production.[16]   If "relevancy is not readily apparent[,] … the party seeking discovery has the burden to show the relevancy of the request."[17]

"The scope of discovery allowed under Rule 45 is the same as allowed under Rule 26."[18]  Under Fed. R. Civ. P. 26(b)(l), a party:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need

---

[13]   *Nguyen v. Lotus By Johnny Dung Inc.*, No. SACV1701317NSJDEX, 2019 WL 4570032, at *3 (C.D. Cal. Apr. 12, 2019) (citing Fed. R. Civ. P. 45(a)).

[14]   Fed. R. Civ. P. 45(d)(2)(B)(i).

[15]   See, e.g., *F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).

[16]   *Id*.

[17]   *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-CV-01058-JADGWF, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017).

[18]   *Nguyen*, 2019 WL 4570032, at *3 (citations omitted).

8

not be admissible in evidence to be discoverable.[19]

Courts construe relevancy "liberally and with common sense" and allow discovery "unless the information sought has no conceivable bearing on the case."[20]   For non-party discovery, courts are "sensitive to weighing the probative value of the information sought against the burden of the production on the nonparty."[21]   With these principles in mind, the documents sought in this case relative to the payment of each Plaintiff's medical expenses are (1) non-privileged, (2) relevant to the defenses asserted in the underlying case, and (3) are within the applicable proportionality limits as set forth in Fed. R. Civ. P. 26(b)(1).

### 1. THE WITHHELD DOCUMENTS ARE RELEVANT TO THE ISSUES OF CAUSATION, DAMAGES, BIAS, AND CREDIBILITY IN THE UNDERLYING CASE.

In a recent decision rendered by the Louisiana Supreme Court, *Simmons v. Cornerstone Investments, LLC*,[22] the court determined whether the full amount of plaintiff's medical expenses that were billed but not paid should be allowed into evidence at trial.   In considering the issue, the court recognized that "[t]he collateral source rule exists to prevent the tortfeasor from benefiting from the victim's *receipt* of monies from independent sources."[23] The Court further recognized that "it is clear the collateral source rule is tethered to payments actually *received* by the plaintiff."[24]

Although *Simmons* involved payment of medical expenses by a worker's compensation insurer, the Louisiana Supreme Court analyzed applicability of the collateral source rule in a broader context.   In particular, the court considered a 2015

---

[19]    Fed. R. Civ. P. 26(b)(l).

[20]    *Nguyen*, 2019 WL 4570032, at *3 (citations omitted).

[21]    *Id*. (citation omitted).

[22]    2018-0735 (La. 5/8/19), 2019 WL 2041377.

[23]    *Id.* at p. 6 (citing *Cutsinger v. Redfern*, 08-2607 at p. 13 (La. 5/22/09), 12 So.3d 945, 954) (emphasis in original).

[24]    *Id*. At p. 6-7 (emphasis in original).

9

1    Louisiana Supreme Court decision, *Hoffman v. 21ˢᵗ Century North American*

2    *Insurance Co.*,[25] in determining whether the collateral source rule applies to attorney-

3    negotiated medical discounts.[26] In *Hoffman,* the Louisiana Supreme Court cited several

4    reasons for not applying the collateral source rule.  The  court stated that "[it] ...

5    decline[s] to extend the collateral source rule to attorney-negotiated medical discounts

6    obtained through the litigation process.  [It] ... holds that such a discount is not a

7    payment or benefit that falls within the ambit of the collateral source rule."[27] The court

8    further stated "allowing the plaintiff to recover an amount which he has not paid, and

9    for which he has no obligation to pay, is at cross purposes with the basis principles

10   of tort recovery in our Civil Code."[28]    Further, ''the plaintiff has suffered no

11   diminution of his patrimony to obtain the write-off, and, therefore, the defendant in

12   this case cannot be held responsible for any medical bills or services the plaintiff did

13   not actually incur and which the plaintiff need not repay."[29]

14       The Louisiana Supreme Court further acknowledged in *Simmons* that the

15   amount of medical expenses that are "written off" by a provider is a "phantom charge

16   that [p]laintiff has not ever paid nor one he will ever be obligated to pay."[30]

17   Consequently, and whether payments are made by a worker's compensation insurer or

18   through an attorney-negotiated medical discount, a plaintiff's patrimony is not

19   diminished in any way, particularly when he did not incur these fictional expenses.[31]

20       The Louisiana Supreme Court in *Simmons* further acknowledged "if

21   [p]laintiff prevails on the merits, a recovery of the reduced amount of medical bills

22   will make him whole, which is an important consideration of both tort recovery

23   _____

24   [25]    14-2279 (La. 10/2/15), 209 So.3d 702.

     [26]    *Id.* at p. 4-5.

25   [27]    *Id.*

26   [28]    *Id.*

27   [29]    *Id.*

     [30]    *Simmons,* 2018-0735 (La. 5/8/19), 2019 WL 2041377 at p. 7.

28   [31]    *Id.*

and the application of the collateral source rule."[32]   It further recognized the important rule of tort deterrence within its tort system and stated "to stretch the argument to include the award of un-incurred medical expenses, in addition to those actually paid, is to effectively authorize the assessment of punitive damages in the absence of statutory authority."[33] Therefore, the court found there was "no true deterrent effect  to allowing plaintiff to recover expenses over and above what was actually paid."[34]  In conclusion, the Louisiana Supreme Court in *Simmons* noted

> (b)  **[t]here is no basis to differentiate between the "written off" amount created by a reduced reimbursement fee under the Workers' Compensation Act and those of a Medicaid Program or an attorney-negotiated medical discount. The bottom line is that the Plaintiff's in each of these situations did not actually incur, and need not repay, the 'written off' amounts at issue. Such amounts are illusory in that they are never statutorily susceptible of being paid by the Plaintiff's.  In the instant case, [p]laintiff did not contribute to his employer's workers' compensation insurance premiums nor did he otherwise pay any consideration for the benefits. ...  This reduction is not the benefit of some bargain struck by plaintiff .... Therefore, any recovery in addition to the reduced amount of medical bills would be a windfall to [p]laintiff and against the rationale behind the collateral source rule. The discounted rate accurately reflects [p]laintiff's compensatory damages, and anything beyond that rate would amount to punitive damages.  Accordingly, [the court] find[s] the collateral source rule does not apply in the lower's courts' rulings on the motions in limine are affirmed.[35]**

*///*

*///*

---

[32]   *Id.* at p. 8.

[33]   *Id.* at p. 9.

[34]   *Id.*

[35]   *Id*. at p. 9-10.

11

1    In *Deperrodil v. Bozovic Marine, Inc.,*[36] the court considered whether a plaintiff

2   could recover the inflated amount charged for medical treatment he received compared

3   to the amount paid under the Longshore & Harbor Worker's Compensation Act. The

4   court held that the LHWCA medical-expense payments "are collateral to a third-party

5   tortfeasor ***only to the extent paid.***"[37] The U.S. Fifth Circuit in *Deperrodil* further stated

6   "in other words, under those circumstances, plaintiff may not recover for expenses

7   billed but not paid."[38]

8    In *Williams v. IQS Ins. Risk Retention,*[39] Judge Jay Zainey of the United States

9   District Court for the Eastern District of Louisiana addressed potential application of

10   the collateral source rule to medical financing through a litigation funding company.

11   Judge Zainey explained the critical issue as it applied to the facts of the case as follows:

> **(c)   The real point of contention insofar as the damages aspect of the collateral source rule is concerned is whether [p]laintiffs can recover the difference between what the treating physicians billed for their services and the amounts that the physicians accepted as full payment for their services to Plaintiff's. Plaintiff's medical bills were paid by a financing company that has contracts with medical providers who treat personal injury Plaintiff's. Plaintiff's counsel contracted with the financing company, which has been promised payment of the providers "full billed rate." The provider, on the other hand, is paid 40% of the "full billed charges." So for example, if the physician's full billed rate for treatment was $100,000, he received at most $40,000 in full satisfaction of his bill, and the remaining $60,000 (hereinafter referred to as "the Difference") is owed by [p]laintiffs' counsel to the finance company. Significantly, Plaintiff's themselves were not parties to any of these agreements, and while they would have**

---

[36]   842 F.3d 352 (5th Cir. 2016).

[37]   *Id.* at 361 (emphasis added).

[38]   *Id.*

[39]   No. CV 18-2472 WL 937848 (E.D. La. Feb. 26, 2019).

> **presumably agreed vis a vis their attorney that the Difference must come out of their recovery as a cost of the litigation, no suggestion has been made that [p]laintiffs themselves agreed to be responsible to anyone for any medical bills or for the Difference should their recovery at trial fall short.**[40]

Based on the above analysis, Judge Zainey held that the collateral source did not apply to the difference between the charged amount of Plaintiff's' medical expenses and the actual payments of those bills by third-party funding companies, stating as follows:

> In this case, [p]laintiffs cannot establish that they paid any benefit or suffered any diminution in their patrimony in order to obtain the discounted medical payments.  The discounts were obtained via a series of contractual agreements that apparently triggered no obligations on Plaintiff's' part.  Again, the Court assumes that Plaintiff's have agreed vis a vis their attorney that the Difference must come out of their recovery as a cost of the litigation, but in *Hoffman* the Supreme Court rejected the argument that this contractual obligation constitutes the type of payment or diminution in patrimony necessary to recover undiscounted medical expenses that were never incurred.  *Hoffman,* 209 So.3d at 707.  The collateral source rule does not apply to the Difference so as to allow Plaintiff's to recover it as an element of special damages.[41]

Considering the above, identification of the specific parties to the financing agreements and the contractual obligation of those parties was critical to Judge Zainey's determination.   In *Williams,* there were separate agreements between Plaintiff's counsel and the financing company and  between the financing company and the medical providers.   The respective obligations of the parties to those agreements had to be examined to determine if the Plaintiff's patrimony was diminished.  Consequently, production of the agreements and of the related payment information is critical to  the defense of this matter.

---

[40]     *Id*. at *3.

[41]     *Id.*

13

Moreover, in *Thomas* v. *Chambers*,[42] Judge Sarah Vance of the United States District Court for the Eastern District of Louisiana considered the admissibility of the third-party litigation funding agreement and activities as evidence of potential bias of the healthcare providers.   Judge Vance found the Eleventh Circuit decision of *ML Healthcare Services, LLC* v. *Publix Supermarkets, Inc.*[43] persuasive.   In *ML Healthcare Services, LLC,* the Eleventh Circuit upheld admissibility of the third-party litigation funding agreement and activities as evidence of potential bias of the treating medical care providers, and their possible desire for additional and continued referrals of patients from the third-party litigation funding company. The court recognized that for the third-party litigation funding companies' business model to flourish, it needs the Plaintiff's whom it subsidizes to win their lawsuits.

In *Thomas*, Judge Vance considered the same issue and rendered the following decision:

> The financial arrangement between Plaintiff's' healthcare providers and the third-party funding companies could create an incentive for Plaintiff's' treating physicians to want Plaintiff's to win their case, because a victory could result in more referrals from TMC and Medport.   That incentive could lead a jury to question the treating physicians' testimony regarding causation. This evidence is thus relevant under Rule 401 because it is probative of whether a witness at trial is biased. The evidence is therefore admissible to impeach the credibility of Plaintiff's' treating physicians who testified.[44]

In *Ortiviz v. Follin*,[45] the Court denied a motion to quash subpoena filed by a medical financing company which the plaintiff contracted with to pay for his medical treatment.   In *Ortiviz*, the court held that

---

[42]   2:18-CV-04373-SSV-KWR (E.L. La. 4/26/19).

[43]   881 F.3d 1293 (11th Cir. 2018).

[44]   *Thomas,* 2:18-CV-04373-SSV-KWR (E.L. La. 4/26/19).

[45]   No. 16-CV-02559-MSK-MEH, 2017 WL 3085515 (D. Colo July 2017).

14

... there is at least a fair basis for a holding Marrick is not a collateral source.  Importantly, unlike an insurance carrier, Marrick did not compensate or indemnify Mr. Ortiviz.  Because the amount Marrick paid Mr. Ortiviz's medical providers may be admissible, it would be improper to deny National Freight the benefit of discovery on these grounds.  After having an opportunity to view the evidence, the District Court will decide at the appropriate time whether the amount paid is admissible under the collateral source rule. Accordingly, the Court refuses to apply the collateral source rule to quash the subpoena.[46]

In *Bramlett* v. *YRC, Inc.,*[47] the Court granted a motion to compel discovery from a third-party litigation financing company, finding "the collateral source rule is not a bar to the requested discovery because it is relevant to and admissible for the purpose of attacking the credibility of Plaintiff's' physicians."  It is also "relevant for the jury to consider in determining the reasonable value of medical services provided."[48]

Most recently, in *Collins v. Benton,*[49] the United States District Court for the Eastern District of Louisiana held that the exact documents sought by Defendants in the instant case from Medport (i.e., purchase agreements and payments Medport made to Plaintiff's medical providers) was "relevant to a determination of the appropriate damages award if the jury concludes that the medical expenses were incurred in bad faith." In Collins, the court further held that "the financial arrangement between Plaintiff's healthcare providers and Medport are admissible for the purpose of impeaching the credibility of Plaintiff's healthcare providers who testify at trial."[50]

Considering the principles discussed above, a complete response from

---

[46] *Id.* at *4.

[47] No. l:16-CV-3870-ODE, 2017 WL 3000042, at *1 (N.D. Ga. Jan. 24, 2017).

[48] *Bramlett*, at *1 (citing *Houston v. Publix Supermkts., Inc.*, No. 1:13-CV-206-TWT, 2015 WL 4581541 (N.D. Ga. July 29, 2015).

[49] No. CV 18-7465, 2021 WL 638116, at *8 (E.D. La. Feb. 17, 2021).

[50] *Collins v. Benton*, No. CV 18-7465, 2021 WL 638116, at *8 (E.D. La. Feb. 17, 2021)

MedPort to the subpoena is necessary to Defendants' defense against Plaintiff's claims in the underlying case. Moreover, the documentation and information sought from MedPort is not privileged and is relevant to the salient issues involved in this matter including Plaintiff's alleged damages, causation, bias, and credibility. Defendants submit that they will be prejudiced in their defense of this matter if MedPort is not compelled to fully respond to the subpoena. Moreover, time is of the essence of this matter, as discovery is scheduled to close on June 30, 2021.

## 2.     MEDPORT CANNOT SATISFY ITS BURDEN OF PROOF

Additionally, Medport cannot satisfy its burden of showing that discovery should not be allowed in this instance. As the party resisting discovery, Medport has the burden to demonstrate "that its objections [to the subpoena] should be sustained."[51] This requires Medport to "clarify[], explain[], and support[] its objections" to the subpoena.[52] But Medport has failed to do so.

In refusing to produce the requested documents, Medport has asserted boilerplate objections to Defendants' subpoena. Its objections to Defendants' subpoena states that the requested documents are "not relevant nor proportional to the needs of this case" … and seeks "information that is confidential, proprietary, and/or trade secret."[53] The objections primarily state that the requested documents are protected from disclosure as they contain private, confidential, proprietary and/or trade secret information, and do not contain any relevant or admissible information.[54] Yet, Medport has provided no evidence, explanation, or argument showing why the subpoena sought irrelevant or confidential proprietary, and

---

[51]   *W Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, No. NO. CV 10-6017 DDP (SS), 2012 WL 12884045, at *2 (C.D. Cal. Aug. 27, 2012).

[52]   *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

[53]   See **Exhibit 6**, at MED000011 - MED000013.

[54]   *Id.*

trade secret information.  As such, there is nothing for this Court to evaluate the merits of those objections.

Medport's "boilerplate objections to the subpoena are insufficient to meet [its] ... burden of showing that the discovery should not be allowed."[55]   "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper- especially when a party fails to submit any evidentiary declarations supporting such objections."[56]   "Where, as here, the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'"[57] Based on the boilerplate objections, Medport has waived its objections to the subpoena, and this Court should compel production of the Withheld Documents.[58]

Ultimately, all of Medport's objections fail on their merit. With respect to Medport's objection regarding the relevance and proportionality of Defendants' request, there is no evidence to support this. Defendants have explained in detail the relevance and proportionality of the requests above.   As such, this Court should therefore overrule Medport's objections.

Again, Medport does not explain what information is confidential or how it has maintained the confidentiality of the information. There is also nothing to suggest the existence of any confidentiality provision in any of the agreements requested under Defendants' subpoena that would subject the providers to the same confidentiality.   There is no evidence or authority cited in Medport's objection to substantiate any protected information.   Medport's "conclusory

---

[55]   Cf *Nguyen*, 2019 WL 4570032, at *4.

[56]   E.g., *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

[57]   *Makaeff v. Trump Univ., LLC*, No. 10-CV-0940-GPC WVG, 2013 WL 990918, at *6 (S.D. Cal. Mar. 12, 2013) (citations omitted).

[58]   Cf *Nguye*n, 2019 WL 4570032, at *4 (overruling boilerplate, conclusory objections to subpoena); *Jang v. Sagicor Life Ins. Co*., No. EDCV171563JGBKKX, 2019 WL 988690, at *3 (C.D. Cal. Jan. 25, 2019) (same).

1   allegations that Defendant[s'] subpoenas seek "private, confidential, and trade
2   secrets information" is wholly insufficient to meet the standard.[59]

3   Notwithstanding the deficient objections, this Court can issue a protective order
4   that  would protect Medport's purported privacy concerns. Courts have approved use
5   of protective orders to alleviate concerns over prejudice from disclosure of confidential
6   information.[60] There is no reason why a protective order limiting the use of the
7   requested documents to Defendants and their attorneys and experts in this case would
8   be inadequate. Therefore, this Court should overrule Medport's objections.

9   Meanwhile, although Medport also claims privacy concerns, it has already
10   disclosed Plaintiff's protected health information as part of its response to Defendants'
11   subpoena. Therefore, there is no genuine concern over privacy.  In any event, there is
12   no reason why a carefully drafted protective order cannot alleviate any concerns over
13   privacy.  Therefore, this Court should overrule this objection.

14   **B.   ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS MOTION TO THE**
15   **ISSUING COURT FOR A DECISION.**

16   Alternatively, this Court should transfer Defendants' motion to compel to
17   the Issuing Court.  Fed. R. Civ. P. 45(f) allows this Court to transfer subpoena-
18   related motions to the court that  issued the subpoena. Transfer is appropriate "if
19   the person subject to the subpoena consents or if the court finds exceptional
20   circumstances."[61] Here, Medport has not consented to the transfer of Defendants'
21   motion to the Issuing Court.  But, there are exceptional circumstances to support
22   the transfer of the enforcement of the subpoena to the Issuing Court.

23   "The party seeking a [Fed. R. Civ. P.] ... 45(f) transfer bears the burden

---

[59]   Cf. *Nguyen*, 2019 WL 4570032, at *4-5 (overruling objection to subpoena on confidentiality grounds due to absence of any supporting evident and authority).

[60]   See, e.g., *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995).

[61]   Fed. R. Civ. P. 45(f).

18

of showing that exceptional circumstances are present."[62]  Fed. R. Civ. P. "45 itself does not expound on what constitutes 'exceptional circumstances ….'"[63] But courts have applied a "balancing test" of the particular facts of a case in determining whether a Fed. R. Civ. P. 45(f) transfer is appropriate.[64]  "On one hand, the court considers the burden on the party responding to the subpoena in the event of a transfer, and on the other hand, the court **considers** factors such as judicial economy, docket management, and the risk of inconsistent rulings."[65]

"[T]he Advisory Committee Notes [for Fed. R. Civ. P. 45(f)] state that 'transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts,' so long as those interests outweigh the interests of the subpoenaed party in obtaining local resolution of the motion."[66] Courts have found that this balance favored a transfer when the Issuing Court "has already supervised substantial discovery and begun preparations for trial" and therefore has a strong interest in maintaining oversight over all aspect of litigation.[67]  Additionally, the interests of the subpoenaed party in obtaining a local resolution of the motion "carried less force" when the subpoenaed party does business nationally.[68] With these principle in mind, the balance of the parties' interests favor the transfer of this motion to the Issuing Court.

---

[62]   *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 216CV00061JADPAL, 2016 WL 593546, at *3 (D. Nev. Feb. 12, 2016).

[63]   *Id.*

[64]   *Id.*

[65]   *Id.*

[66]   *Id.*

[67]   See, e.g., *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (finding exceptional circumstances where issuing court" has already supervised substantial discovery and begun preparations for trial").

[68] See, e.g., *Id.* (transferring subpoena-related motion where local party was national corporation" and thus the presumption of local resolution, carried less force").

The burden on Medport to litigate in Louisiana is minimal.  As Medport's website indicates, Medport does business throughout the United States. It has impliedly consented to jurisdiction in Louisiana.  Medport does not dispute that it purchased Plaintiff's' medical bills from their  medical providers in Louisiana. Medport has also purchased medical bills in Louisiana for other litigants unrelated to this case. Furthermore, the cost to travel is fairly minimal, as the Issuing Court requires electronic filings and may likely rule on this motion based solely on  the briefs.  Even if there is a hearing on this motion, the court may allow telephonic appearance at the hearing.[69]

Additionally, there is a greater interest to have the Issuing Court decide this motion. With  the underlying case nearing the end of discovery, the Issuing Court has already supervised substantial discovery and ruled upon discovery motions dealing with this identical issue.  As noted above, the Issuing Court has already issued a ruling concerning a Motion to Quash filed by one of Plaintiff's medical providers in response to a nearly identical subpoena requesting substantially the same type of documents.[70] More importantly, the Issuing Court determined that the requested documents are discoverable and ordered that they be produced.[71]  This ruling was also forwarded to counsel for Medport, but surprisingly the Issuing Court's decision was ignored and Medport still refuses to produce the requested documents.

Not only to avoid an inconsistent decision on the issues raised in this motion, the Issuing Court is in a better position than this Court to evaluate the relevance of, and necessity for, documents demanded in the subpoena because the evaluation turns on an interpretation of  Louisiana law, not Nevada law.  There can be no dispute that the Issuing Court is more familiar with Louisiana law and the nuances of Louisiana's

---

[69]     *See* Fed. R. Civ. P. 45 Advisory Comm.  Notes (encouraging district judges to "permit telecommunications" in order to minimize travel costs after a Fed. R. Civ. P. 45(f) transfer).

[70]     *See* **Exhibit 7**, Memorandum Order by Issuing Court dated March 11, 2021.

[71]     *Id.*

1  collateral source rule and its application to the underlying case.  Thus, the balance of

2  interests strongly favors a transfer of this motion to the Issuing Court.

3  **III.  CONCLUSION**

4       Based on the reasons discussed above, this Court should order that Medport

5  produce all documents responsive to Defendants' subpoena without further delay.

6  Alternatively, it should transfer the instant motion to the United States District Court

7  for the Western District of Louisiana for resolution.

8  Dated:  May 19, 2021              BREMER WHYTE BROWN & O'MEARA
                       LLP

9

10                        By: _____

11                          Lucian J. Greco, Jr., Esq.
                         Nevada State Bar No. 10600

12                          Jared G. Christensen, Esq.
                         Nevada State Bar No. 11538

13                          Attorneys for Defendants
                         MARCUS BROWN, SOUTHERN

14                          REFRIGERATED TRANSPORT
                         INC., AND IQS INSURANCE

15                          RISK RETENTION GROUP INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**INDEX OF EXHBITS TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO SUBPOENA OR, ALTERNATIVELY, MOTION TO TRANSFER ENFORCEMENT OF SUBPOENA**

| EXHIBIT NO. | DESCRIPTION OF EXHIBIT |
|---|---|
| 1. | Defendants' Notice of Removal |
| 2. | Medport's Website – medport.com/howitworks |
| 3. | Notice of Records Deposition and Subpoena Duces Tecum issued to Medport LA, LLC |
| 4. | Affidavit of Service of Subpoena Duces Tecum |
| 5. | Correspondence from Medport to Counsel for Defendants dated February 24, 2021 |
| 6. | Documents produced by MedPort in response to Subpoena Duces Tecum, bates labeled MED000001 – MED000339. |
| 7. | Memorandum Order by Issuing Court dated March 11, 2021. |
| 8. | Correspondence to Medport from Counsel for Defendants dated March 16, 2021. |
| 9. | Correspondence from Medport to Counsel for Defendants dated March 25, 2021. |
| 10. | Amended Scheduling Order dated March 15, 2021. |

22

3354.714 4845-3598-6410.1

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on this 19th day of May 2021, a true and correct copy of

3 **DEFENDANTS' EMERGENCY MOTION TO COMPEL PRODUCTION OF**

4 **DOCUMENTS RESPONSIVE TO SUBPOENA OR, ALTERNATIVELY,**

5 **MOTION TO TRANSFER ENFORCEMENT OF SUBPOENA** was served via

6 email and personal service upon all parties listed below:

7    Marisa Guarine Stearns, Esq.          MedPort LA, LLC
     Legal Counsel for MedPort LA, LLC      c/o Louis E. Garfinkel
8    6325 S. Jones Blvd., Ste. 400         1671 W. Horizon Ridge Parkway,
     Las Vegas, NV 89118                         Ste. 230
9    marisa@movedocs.com                   Henderson, NV 89012
10

11

12

13

14

15

16    _____
      Alexis Robinson, an employee of
17    BREMER WHYTE BROWN &
      O'MEARA, LLP
18

19

20

21

22

23

24

25

26

27

28

3354.714 4845-3598-6410.1